UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **STEVE EDWARD L.,**[1]<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,**<br><br>　　　　　　　　　　　Defendant. | Case No.: 3:19-cv-00072-MK<br><br>**OPINION AND ORDER**[2] |

**KASUBHAI, Magistrate Judge:**

## INTRODUCTION

Plaintiff Steve Edward L. brings this action for judicial review of the Commissioner of Social Security's ("Commissioner") decision denying him application for Disability Insurance Benefits under the Social Security Act (the "Act"). This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c).

For the reasons discussed below, the Court AFFIRMS the Commissioner's final decision.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental parties in this case.

[2] Both parties consented to full jurisdiction by a U.S. Magistrate Judge. ECF No. 5. Pursuant to Standing Order 06-mc-9130, the United States consented to jurisdiction by a U.S. Magistrate Judge. *Id.*

PAGE 1—OPINION AND ORDER

**ADMINISTRATIVE HISTORY**

Plaintiff applied for Disability Insurance Benefits on January 26, 2016, alleging disability beginning June 30, 2015. Tr. 17[3]. His claims were initially denied, and Plaintiff timely requested and appeared for a hearing before Administrative Law Judge ("ALJ") Jo Hoenninger on November 28, 2017. *Id.* The ALJ denied Plaintiff's application in a written decision dated January 31, 2018. Tr. 17-27. Plaintiff sought review of the ALJ's decision with the Appeals Council. Tr. 1-3. The Appeals Council denied review of the ALJ's decision, rendering the ALJ's decision the final decision of the Commissioner. *Id*. Plaintiff now seeks judicial review of the Commissioner's final decision.

**DISABILITY ANALYSIS**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). The five-step sequential inquiry is summarized below, and as described in *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999).

Step One: The Commissioner determines whether the claimant is engaged in substantial gainful activity. A claimant who is engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under step two. 20 C.F.R. § 416.920(b).

Step Two: The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have any such impairment is not disabled. If the claimant

---

[3] "Tr." Refers to the Transcript of Social Security Administrative record provided by the Commissioner.

has one or more severe impairment(s), the Commissioner proceeds to evaluate the claimant's case under step three. 20 C.F.R. § 416.920(c).

Step Three: Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration ("SSA") regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has an impairment that meets a listing is presumed disabled under the Act. If the claimant's impairments are not equivalent to one of the enumerated impairments, between the third and fourth steps the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's record. *See* 20 C.F.R. § 416.920(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related physical and/or mental activities on a regular and continuing basis, despite limitations imposed by the claimant's impairments. *See* 20 C.F.R. § 416.945; *see also* SSR 96-8p, 1996 WL 374184.

Step Four: The Commissioner determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do past relevant work, the Commissioner's evaluation of claimant's case proceeds under step five. 20 C.F.R. §§ 416.920(e), 416.920(f).

Step Five: The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that claimant is able to do. The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE"), or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner

PAGE 3—OPINION AND ORDER

demonstrates that a significant number of jobs exist in the national economy that the claimant is able to perform, the claimant is not disabled. If the Commissioner does not meet the burden, the claimant is disabled. 20 C.F.R. § 416.920(g).

At steps one through four of the sequential inquiry, the burden of proof is on the claimant. *Tackett*, 180 F.3d at 1098. If the claimant satisfies his burden with respect to the first four steps, the burden then shifts to the Commissioner regarding step five. 20 C.F.R. § 416.920(g). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work after considering the claimant's RFC, age, education, and work experience. *Id.*

## THE ALJ'S FINDINGS

In the present case, the ALJ found that Plaintiff was not disabled. Tr. 27. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the onset date of November 24, 2015. Tr. 19. At step two, the ALJ found Plaintiff had the following severe impairments: "chronic pancreatitis and diabetes mellitus." Tr. 20. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1 ("Listings"). Tr. 21. Prior to step four, the ALJ determined that Plaintiff retained an RFC that allowed him to perform medium work, "except [that] he can frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds, stoop, kneel, crouch and crawl." Tr. 21. At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a School Bus Driver and Building Maintenance Worker. Tr. 25.

Plaintiff seeks review by this Court contending that (1) the ALJ improperly rejected Plaintiff's subjective complaints; and (2) an improper and unconstitutionally appointed ALJ adjudicated his case.[4] Pl.'s Br. 1, ECF No. 14.

## STANDARD OF REVIEW OF ALJ DECISIONS

This Court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted); *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen,* 881 F.2d 747, 750 (9th Cir. 1989). "The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing *Vidal v. Harris,* 637 F.2d 710, 712 (9th Cir. 1981); *Day v. Weinberger,* 522 F.2d 1154, 1156 (9th Cir. 1975)). "Where the evidence as a whole can support either a grant or a denial, [this Court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

---

[4] Plaintiff asserts that this Court should remand the case pursuant to the Supreme Court's decision in *Lucia v. SEC*, 138 S. Ct. 2044, 201 L. Ed. 2d 464 (2018), which held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. According to Plaintiff, his case was adjudicated "by an improper and unconstitutionally appointed ALJ." Pl.'s Br. 22, ECF No. 14. To the extent *Lucia* applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it in his briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

# DISCUSSION

The ALJ's decision is affirmed because the ALJ based her decision on substantial evidence in the record. The ALJ did not err in discounting Plaintiff's subjective testimony.

## A. SUBJECTIVE TESTIMONY STANDARD

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion [that] the claimant is not credible is insufficient; instead, the ALJ must "state which … testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Social Security Ruling ("SSR") 16-3p[5] provides that "subjective symptom evaluation is not an examination of an individual's character," and requires that the ALJ consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The ALJ must examine "the entire case

---

[5] Effective March 28, 2016, SSR 16-3p supersedes and replaces SSR 96-7p, which governed the assessment of claimant's "credibility." *See* SSR 16-3p, *available at* 2016 WL 1119029.

record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

SSR 88–13 directs the ALJ as follows:

[I]t is essential to investigate all avenues presented that relate to subjective complaints, including the claimant's prior work record and information and observations by treating and examining physicians and third parties, regarding such matters as:

1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain [or other symptom];
2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
3. Type, dosage, effectiveness, and adverse side effects of any pain medication;
4. Treatment, other than medication, for relief of pain [or other symptom];
5. Functional restrictions; and
6. The claimant's daily activities.

*Smolen*, 80 F.3d at 1284.

## B. ANALYSIS

The ALJ properly rejected Plaintiff's subjective symptom testimony by offering clear and convincing evidence regarding Plaintiff's physical impairments. The ALJ properly considered the Plaintiff's prior work record and observations of treating physicians as required under SSR 88–13. The ALJ also provided clear and convincing evidence for discounting Plaintiff's testimony by showing that Plaintiff's activities of daily living meet the threshold for transferable work skills and contradict his testimony regarding his limitations.

### 1. Physical Impairments

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's testimony concerning his pancreatitis and diabetes. Pl.'s Br. 11, ECF No. 14. The

Commissioner argues that the ALJ reasonably weighed Plaintiff's subjective testimony against the evidence in the record and provided clear and convincing reasons for rejecting Plaintiff's testimony. Def.'s Br. 2-3, ECF No. 15.

The ALJ found that Plaintiff has medically documented impairments that could reasonably be expected to produce the alleged symptoms. Tr. 22. The ALJ did not find affirmative evidence of malingering. *See* Tr. 22-25. Therefore, the ALJ must provide clear and convincing evidence why he rejected Plaintiff's testimony about the severity of his physical impairments. The ALJ discredited Plaintiff's testimony after finding "significant inconsistencies between the claimant's allegations of physical conditions preventing him from working and the minimal objective medical findings." Tr. 22. Specifically, the ALJ found that the "intensity, persistence, and limiting effects" of Plaintiff's symptoms are inconsistent with the medical evidence. *Id.* In addition, the ALJ found that the record references activities that are inconsistent with Plaintiff's allegations of disabling symptoms and limitations. Tr. 24.

### a. Chronic Pancreatitis

In regard to Plaintiff's chronic pancreatitis, Plaintiff argues that the ALJ "failed to point to specific facts in the record" to discount Plaintiff's symptoms. Pl.'s Br. 14-15, ECF No. 14. The ALJ found that Plaintiff's alleged intensity, persistence, and limiting effects of his related symptoms "are not evident in the medical evidence." Tr. 23. Evidence of effective treatment may support an ALJ's rejection of symptom allegations. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). The ALJ cited the following evidence in the record to support her rejection of Plaintiff's subjective testimony.

The ALJ found that although Plaintiff's chronic pancreatitis does cause occasional bouts of symptoms, Plaintiff's alleged symptoms have improved since his initial diagnosis. *Id.* In October 2015, Plaintiff underwent a CT scan of his abdomen revealing a heterogeneous appearance of the pancreatic head with mild peripancreatic inflammatory changes and small lymph nodes, and mild biliary dilation. Tr. 23, 472, 473. Plaintiff followed up with his primary care provider and reported "severe pain to his left upper quadrant." Tr. 23, 392. Plaintiff reported "pain that can be as high as 9 out of 10", and "when it was that bad," hydrocodone did not provide relief. *Id.*

In November 2015, Plaintiff underwent an endoscopic ultrasound revealing "diffuse changes consistent with chronic pancreatitis" more pronounced in the pancreatic head. Tr. 23, 466, 467. Plaintiff was counseled on absolute cessation of alcohol because Plaintiff still drank intermittently. Tr. 23, 467. After the endoscopy, Plaintiff presented to the emergency room with "worsening epigastric pain, nausea, and vomiting." Tr. 23, 366. Plaintiff was given fluids and pain medication but was unable to tolerate food and therefore was hospitalized overnight. Tr. 23, 369.

In early December 2015, Plaintiff followed up with his primary care provider and reported his was pain as a five on a scale of one to ten. Tr. 23, 357. He further reported that he was "eating okay without too much pain," and "cutting back" his use of alcohol. *Id.* On exam, Plaintiff's abdomen was "soft but moderately tender to palpation in right upper quadrant, epigastrum[,] and left upper quadrant." Tr. 23, 358. By mid-December 2015, Plaintiff reported that "he has recovered from his recent hospitalization," but continued to have pain and "trouble eating without pain." Tr. 23, 355. Plaintiff reported "he sometimes needed to take two oxycodone every four hours to control his pain, but sometimes it was not as bad." *Id.* Plaintiff

was counseled on the "importance of finding foods that minimize symptoms and avoidance of all alcohol." *Id.*

Then, in February 2016, Plaintiff reported that he had "been at baseline since discharge from the hospital and he was not consuming alcohol anymore." Tr. 23, 352. Plaintiff underwent a second CT scan of his abdomen, which revealed "significantly decreased to now mild potentially residual acute pancreatitis involving the pancreatic head with no evidence of pancreatic mass." Tr. 23-24, 449-450. In May 2016, Plaintiff reported "overall he was doing ok and he had no flares of his pancreatitis." Tr. 24, 501.

In September 2016, Plaintiff reported that "he continued to have a lot of pain and when he had pancreatic pain, he had left upper quadrant pain radiating to his back." Tr. 24, 530. Plaintiff also reported "lower abdominal pain and bloating, loss of appetite, nausea, and infrequent stools." *Id.* Furthermore, Plaintiff reported that "his pain medication was not working as it used to." *Id.* On exam, Plaintiff had "normal bowel sounds, and his abdomen was soft and nondistended." Tr. 24, 531. In addition, Plaintiff had "tenderness without rebound or guarding in his left upper quadrant." *Id.* Plaintiff's doctor charted that Plaintiff's "constipation was playing a role in his pain, as his chronic pain flares led to increased narcotic use." *Id.* The doctor also noted that "parenteral nutrition was not a viable option and was not necessary." *Id.*

Later in September 2016, Plaintiff reported that "he felt his pain was getting better and wanted to defer an upcoming CT scan." Tr. 24, 534. In December 2016, Plaintiff underwent a surgical consult.[6] Tr. 24, 536. The physician felt that Plaintiff "was not a candidate for a drainage procedure given the studies showing his pancreatic duct was not dilated, he did not have

---

[6] According to Plaintiff and transcripts, the surgical consult occurred in November 2016. The Court does not find the inconsistent dates material in this analysis.

PAGE 10—OPINION AND ORDER

gallstones and [it] seemed the etiology of his pancreatitis was a history of alcohol use." *Id.* But because "the majority of the [Plaintiff's] imaging abnormalities seemed to be in the pancreatic head, a pancreatoduodenectomy would be a surgical option." Tr. 24, 536.

In March 2017, Plaintiff reported that he had a pain flare-up in the prior week, lasting three to four days, "but overall he had been better." Tr. 24, 545. In August 2017, Plaintiff reported that he continued "to have trouble with pain from his pancreas," with "some days that are difficult to bear." Tr. 24, 546. Plaintiff also reported that "he did not want to go through surgery at that time." Tr. 24, 547. Plaintiff's pain management plan was not changed. *Id.*

After recounting the above medical evidence in her decision, the ALJ found that Plaintiff's chronic pancreatitis had "improved since his initial diagnosis with diet and abstinence from alcohol." Tr. 24. Although Plaintiff does have flare-ups of chronic pancreatitis, "his symptoms are not as frequent or as limiting as he has alleged." Tr. 24. Specifically, the ALJ found that Plaintiff "has not reported his currently alleged frequency of his flares to his treating providers and he has not sought urgent care for any symptoms since 2015." Tr. 23. The ALJ provided clear and convincing evidence from the record to support her decision to discredit Plaintiff's subjective symptom testimony.

### b. Diabetes Mellitus

The ALJ found that the record contains minimal objective medical evidence supporting that Plaintiff suffers from a disabling physical impairment due to diabetes mellitus. Tr. 22. Before Plaintiff started insulin in August 2015, his A1C measured 13.1. Tr. 22, 407, 480. By October 2015, Plaintiff's A1C measured 8.1. Tr. 22, 478. Subsequently, Plaintiff's A1C consistently remained between 6.1 and 6.5. Tr. 22, 454, 504, 554, 560. Although Plaintiff is insulin dependent, the record does not contain evidence of "secondary problems" such as

neuropathy or retinopathy. Tr. 22, 391. According to Dr. Gould, Plaintiff's diabetes is controlled. Tr. 22, 355, 532.

The ALJ cited specific clear and convincing evidence in the record to support her rejection of Plaintiff's subjective testimony as to physical impairments related to diabetes. The ALJ documented the conservative treatment Plaintiff received for his diabetes, and the effectiveness of that treatment. Therefore, the ALJ did not err in rejecting Plaintiff's subjective symptom testimony.

### 2. Activities of Daily Living

Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills[;]" or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). When considering the factor of daily activities, the Ninth Circuit has repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, and only if the level of activity is inconsistent with the claimant's claimed limitations would these activities have any bearing on the claimant's credibility. *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (citing *Smolen*, 80 F.3d at 1287 n. 7 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication."); *Fair*, 885 F.2d at 603 ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.")

Plaintiff argues that the ALJ improperly disregarded that Plaintiff's daily activities were performed sparingly. Pl.'s Br. 20, ECF No. 14. Specifically, Plaintiff argues that the ALJ failed to explain how Plaintiff's occasional ability to perform daily activities "means he has skills to perform the jobs identified by the [vocational expert]." Pl.'s Br. 19-20, ECF No. 14.

The ALJ found that Plaintiff's activities are "inconsistent with and not as limited to the extent one would expect given the complaints of disabling symptoms and limitations." Tr. 24. For instance, Plaintiff reported that he takes care of his young twin daughters, tends to his personal care, prepares meals, and performs house and yard work when he feels well and has the energy. Tr. 24, 297-299. Plaintiff also reported that he shops "a few times a week rarely more than an hour." Tr. 24, 299. The ALJ also noted that Plaintiff voluntarily surrendered his commercial driver's license because he did not want to undergo a sleep study. Tr. 24, 410.

At the hearing, Plaintiff testified he drives up to twice per week to pick up his daughters and run errands, and occasionally drives for ride share companies. Tr. 39. Plaintiff also testified he goes to the grocery store once every two weeks, attends church once every three months, goes out to eat once every three months, and visits family and friends. Tr. 42-43. Plaintiff testified that when he feels well, he does household chores including dishes several times per week, laundry, sweeping, and that he mops once per week. Tr. 42. For yard work, Plaintiff testified that he can rake leaves, mow the lawn, and spray the roof from a ladder. *Id.*

"While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (citations and internal punctuation omitted). The ALJ reviewed Plaintiff's activities of daily living in the record and found that these activities are

consistent with his ability to perform some light exertional activities. Tr. 24. The ALJ's findings are specific, supported by the record, and contradict Plaintiff's subjective testimony. Therefore, the ALJ properly rejected Plaintiff's subjective testimony regarding his activities of daily living.

In sum, the ALJ provided clear and convincing evidence regarding Plaintiff's physical impairment and activities of daily living to support discrediting Plaintiff's subjective testimony. The ALJ set out a detailed summary of the facts and issued an opinion based on substantial evidence.

## CONCLUSION

As discussed above, the ALJ did not err in rejecting Plaintiff's subjective testimony. The ALJ's opinion was based on substantial evidence. Therefore, this Court AFFIRMS the ALJ's decision.

IT IS SO ORDERED.

DATED this <u>16th</u> day of December 2019.

s/ Mustafa T. Kasubhai<br>
MUSTAFA T. KASUBHAI<br>
United States Magistrate Judge